# In the United States Court of Federal Claims

No. 15-1307
(Filed under seal: 30 October 2019)
(Reissued: 12 November 2019[*])

*******************************************
CELLCAST TECHNOLOGIES, &ast;
LLC AND ENVISIONIT, LLC, &ast;
&ast;
     Plaintiffs, &ast; Patent Infringement; RCFC 16(b)(4);
&ast; Good Cause; Modification of
v. &ast; Scheduling Order; Amend Invalidity
&ast; Disclosures; Limited Discovery.
THE UNITED STATES, &ast;
&ast;
     Defendant, &ast;
&ast;
   and &ast;
&ast;
INTERNATIONAL BUSINESS &ast;
MACHINES CORP., &ast;
&ast;
    Third-party defendant &ast;
&ast;
*******************************************

*Peter J. Chassman*, with whom was *Michael Forbes*, Reed Smith LLP, Houston, TX, for plaintiffs.

*Nicholas J. Kim*, *Walter Brown*, and *Carrie E. Rosato*, Trial Attorneys, with whom were *Joseph H. Hunt*, Assistant Attorney General, and *Gary L. Hausken*, Director, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, DC, for defendant.

*Mark Joseph Abate*, with whom were *Dietrich Brown*, *Calvin E. Wingfield Jr.*, *Shaun de Lacy*, and *Alexandra D. Valenti*, Goodwin Procter, LLP, New York, NY, for third-party defendant.

---

[*] This opinion was originally filed under seal pursuant to the protective order in this case, and the parties were granted the opportunity to propose redactions. No redactions were proposed, and the order is reissued.

**OPINION AND ORDER**

**HOLTE**, **Judge**.

Plaintiffs accuse the government of infringing five United States patents. The government noticed the licensed developers of the technology, International Business Machines Corporation, who join the government in defending the claims of patent infringement. After nearly two years of discovery, defendants served Supplemental Responsive Claim Charts, including supplemental invalidity contentions, to plaintiffs on 11 May 2018. On 25 May 2018, plaintiffs filed a Motion to Strike Defendants' Untimely Supplemental Invalidity Contentions. Defendants further filed a Motion to Reopen Fact Discovery as to Non-Party Multi-Technical Systems, Inc. on 18 April 2019, which plaintiffs oppose. Expert discovery is deferred until the Court issues its ruling on claim construction. This case was transferred to the undersigned Judge on 29 July 2019. For the following reasons, the Court **DENIES** plaintiffs' Motion to Strike Defendants' Untimely Supplemental Invalidity Contentions and **GRANTS** defendants' Motion to Reopen Fact Discovery as to Non-Party Multi-Technical Systems, Inc.

## I.   Overview

Plaintiff EnvisionIT, LLC ("EnvisionIT") is the assignee of five U.S. patents: 7,693,938; 8,103,719; 8,438,221; 8,438,212; and 9,136,954 (collectively, "the patents"). Pls.' Compl. ¶ 18, ECF No. 1. CellCast Technologies, LLC ("CellCast") holds an exclusive license to each of the patents. *Id.* ¶ 19. EnvisionIT and CellCast (collectively, "plaintiffs") bring the present action alleging various government agencies infringed the patents, including the Federal Emergency Management Agency ("FEMA"), the United States Department of Homeland Security ("DHS"), and the National Oceanic and Atmospheric Administration ("NOAA"). *Id.* ¶ 5.

The patents fall into two patent families: the "'938 family," which includes U.S. patents 7,693,938, 8,103,719 and 8,438,212; and the "'221 family," which includes U.S. patents 8,438,221 and 9,136,954. The parties agree U.S. patent 7,693,938 (the "'938 patent") serves as a representative example of the technology associated with the patents. *See* Plaintiffs' Corrected Claim Construction Brief at 4, ECF No. 53; The United States' and International Business Machines Corporation's Opening Claim Construction Brief at 2–3, ECF No. 54. The patents generally relate to technology for the authorization and sending of a broadcast message to devices within a specified target area. *See* '938 patent at Abstract. For example, it may be desired to deliver a message to the public during emergency events or otherwise dangerous situations. *Id.* at 1:27–32. The message is delivered only to devices located within a specified geographic target area. *Id.* at 4:50–62. An admission control prevents unauthorized users from broadcasting messages. *Id.* at 5:4–11.

The Integrated Public Alert Warning System ("IPAWS") is among the technology plaintiffs allege infringe the patents. Pls.' Compl. ¶ 20. According to the government, International Business Machines Corporation ("IBM") developed IPAWS under a contract with the Department of Homeland Security. Gov't's Unopposed Mot. to Notice Third Party at 2, ECF No. 10. The government noticed IBM pursuant to Rule 14(b) of the Rules of the United States

Court of Federal Claims ("RCFC") and IBM entered the case. *See generally* IBM's Ans, ECF No. 21. The government and IBM are hereinafter collectively referred to as "defendants."

Claim construction is fully briefed and this Court held a *Markman* hearing on claim construction on 13 September 2017. Order, ECF No. 71. The Court must construe six disputed claim terms, in addition to determining whether four claims are construed according to 35 U.S.C. § 112, ¶ 6. An order on claim construction is forthcoming. According to this Court's 17 August 2018 Order, expert discovery is not set to begin until after the Court issues its order on claim construction. Order at 3, ECF No. 131.

Two motions regarding ongoing discovery disputes are currently pending before the Court: plaintiffs' Motion to Strike Defendants' Untimely Supplemental Invalidity Contentions ("Pls.' Mot. to Strike"), ECF No. 109, and defendants' Motion to Reopen Fact Discovery as to Non-Party Multi-Technical Systems, Inc. ("Defs.' Mot. to Reopen Disc."), ECF No. 142.

## II. Plaintiffs' Motion to Strike Defendants' Untimely Supplemental Invalidity Contentions

### A. Procedural History

On 11 July 2016, the parties submitted a Joint Preliminary Status Report setting forth certain rules and dates for the management of this patent case. *See* Joint Preliminary Status Report ("JPSR"), ECF No. 28 (modeled in part on the Special Procedures Order for Cases under 28 U.S.C. § 1498(a) (originally adopted by Senior Judge Damich, as seen in *Holmberg v. United States*, No. 14-cv-284 (Fed. Cl. June 10, 2014))). A scheduling conference was held on 19 July 2016, and this Court issued a scheduling order on 20 July 2016. *See* Order, ECF No. 33. The 20 July 2016 scheduling order set the date for submission of plaintiffs' claim charts on 14 October 2016 and the government and third-party defendant's response charts on 16 December 2016. *Id.* at 1. Defendants served a joint response chart on 16 December 2016 which included defendants' invalidity contentions. Pls.' Mot. to Strike at 2.

On 11 May 2018, plaintiffs received defendants' Supplemental Responsive Claim Charts, seeking to amend defendants' initial invalidity contentions of 16 December 2016. *Id.* at 3. On 25 May 2018, plaintiffs filed their Motion to Strike Defendants' Untimely Supplemental Invalidity Contentions, ECF No. 109. Defendants filed their Response in Opposition to Plaintiffs' Motion to Strike Defendants' Supplemental Invalidity Contentions ("Defs.' Opp'n to Mot. to Strike"), ECF No. 118, on 8 June 2018. Defendants also filed their Declaration of Gregory Noonan in Support of Defendants' Response in Opposition to Plaintiffs' Motion to Strike Defendants' Supplemental Invalidity Contentions ("Noonan Decl."), ECF No. 119, on 8 June 2018. The Noonan Declaration discusses details regarding the government's discovery of the newly uncovered evidence. *See generally* Noonan Decl. On 15 June 2018, plaintiffs filed their Reply in Support of Plaintiffs' Motion to Strike Defendants' Untimely Supplemental Invalidity Contentions ("Pls.' Reply to Mot. to Strike"), ECF No. 120.

Oral argument was held on 17 August 2018, followed by an order permitting plaintiffs to "file a supplemental paper in support of their motion to strike defendants' supplemental

invalidity contentions, addressing any authorities regarding the application of constructive knowledge to the diligence inquiry." Order, ECF No. 132.  Plaintiffs filed their Supplemental Submission in Support of Plaintiffs' Motion to Strike Defendants' Untimely Supplemental Invalidity Contentions, ECF No. 135, on 24 August 2018.  On 31 August 2018, defendants filed their Response to Plaintiffs' Supplemental Submission, ECF No. 137.

### B.  Factual History

On 1 May 2018, ten days before the close of fact discovery, defendants informed plaintiffs they planned to supplement invalidity contentions based on newly uncovered evidence during discovery.  Pls.' Mot. to Strike at 3.  Plaintiffs opposed the supplementation.  *Id.*  The government "sought to alleviate potential prejudice to Plaintiffs by offering the government's NOAA designees for deposition after May 11, so Plaintiffs would have time to analyze Defendants' supplemental contentions before taking those depositions."  Defs.' Opp'n to Mot. to Strike at 8.  In response, plaintiffs cancelled the depositions of NOAA designees.  *Id.*

On 11 May 2018, without seeking leave from this Court, defendants provided plaintiffs with supplemental invalidity contentions.  Pls.' Mot. to Strike at 3.  The supplemental contentions allege invalidity based upon two distinct sources of newly discovered evidence: first, recently uncovered documents fundamentally changing the government's understanding of how the NOAA Weather Radio ("NWR") can operate; and second, a developing theory regarding the Hazards Emergency Message Collection System ("HazCollect") that could not be sufficiently established until the deposition of certain non-party witnesses possessing invaluable information pertaining to HazCollect.  Defs.' Opp'n to Mot. to Strike at 5.

Defendants' first basis for supplementation of invalidity contentions is the government's assertion of recently uncovered documents relating to certain NOAA technology.  *Id.* at 4.  The newly discovered documents consist of two types: Memoranda of Understanding ("MOUs") and Memoranda of Agreement ("MOAs"), collectively referred to as "the NOAA Documents."  *Id.* at 1.  Specifically, the government alleges the preparation of possible witnesses for RCFC 30(b)(6) Notices led to the discovery of the documents.  *Id.* at 4.  The government physically stored the NOAA Documents in a storage cabinet containing unrelated documents absent any indexing.  *Id.*; *see also* Noonan Decl. ¶¶ 7, 9.  The government only located the documents as the result of a "fortuitous introduction to a potential deposition witness."  Defs.' Opp'n to Mot. to Strike at 10. 118.  Mr. Greg Noonan, a NOAA employee, located these documents at the Central Region Headquarters in Kansas City, Missouri in February 2018, following interviews with the government.  *See id.* at 4; *see also* Noonan Decl. ¶ 6.  While the exact date of discovery of the documents is unclear, counsel for the government approximates the date as "probably mid to late February [2018]."  Tr. at 77:12, ECF No. 134.  Plaintiffs challenge the government's knowledge of Mr. Noonan prior to his locating the NOAA documents in February 2018, relying on previously produced documents containing Mr. Noonan's name.  Pls.' Reply to Mot. to Strike at 9.  Plaintiffs claim the production of these documents apprised the government of Mr. Noonan prior to being interviewed as a potential Rule 30(b)(6) designee, and such prior notice provided the government the opportunity to search Mr. Noonan's files concerning NWR or HazCollect much earlier in the discovery period.  *Id.* at 10.

The government previously disclosed NWR as background prior art. *See* Defs.' Opp'n to Mot. to Strike at 2–3. The NOAA Documents are various written agreements between the states and the National Weather Service ("NWS") providing directions for the authentication of non-weather released emergency messages ("NWEMS") received from state and local authorities. *Id.* at 1. The NOAA Documents describe the authentication of a message as "providing an authentication passcode . . . to the local NWS forecaster, or by the NWS forecaster calling back the appropriate state duty officer, sheriff's department, or emergency management director." *Id.* at 4.

According to the government, these previously unknown documents fundamentally change the government's understanding of how the NWR, an older previously disclosed technology, transmits authorized NWEMS. *See id.* at 10. The government contends the execution dates of the agreements predate the filing date of any of the patents but could not be located before because they were not stored in a searchable format. *Id.* As the NOAA Documents alter the defendants' understanding of how the NWR system operates, plaintiffs allege they have been denied fair notice of defendants' invalidity theories in the preparation of claim construction theories and conducting discovery, as well as subjected to delays and additional expenses. Pls.' Mot. to Strike at 7. However, neither plaintiffs nor defendants allege the NOAA Documents will affect the construction of claim terms in the patents. *See* Defs.' Opp'n to Mot. to Strike at 11.

Defendants' second basis for supplementation of invalidity contentions is a developing theory impacted throughout the course of discovery, aided by testimony of witnesses "necessary to fill in missing details not apparent from prior documentary discovery . . . ." *Id.* Defendants allege they formed the HazCollect invalidity theory "over time through the collection of documents from NOAA and [a non-party contractor]; analysis of the voluminous native product of Mr. Ham; and depositions of witnesses such as Messrs. Ham, Estelle, and Eyestone." *Id.* at 5.

Designed in the early 2000s as "an automated system for collecting, authenticating, and disseminating NWEMs over NWR," HazCollect was developed in conjunction with a non-party government contractor. *Id.* at 2. According to government's counsel, a non-party contractor retained possession of documents critical to the understanding of HazCollect. *See* Tr. at 86:13–88:1, ECF No. 134. The government began operating HazCollect in approximately 2009. Defs.' Opp'n to Mot. to Strike at 5. Defendants attribute the absence of any mention of the HazCollect technology in the original 16 December 2016 invalidity contentions to the burdensome review of "volumes of documents produced by non-parties . . . ." *Id.* Defendants assert the information provided during depositions of Messrs. Ham, Estelle, and Eyestone confirmed HazCollect as a "viable invalidity reference" and "establish[ed] its prior art status." *Id.* at 11.

## C. Applicable Law

RCFC 16(b)(4) allows the modification of a court-imposed schedule "only for good cause and with the judge's consent." While defendants did not initially move for leave to amend invalidity contentions pursuant to RCFC 16(b)(4) as a result of the mistaken belief the Joint Preliminary Status Report was controlling (which omitted any reference to obtaining leave of court to amend), the issue has nonetheless been fully briefed and is now before the Court for

determination.[1]  The good cause standard of RCFC 16(b)(4) mirrors many local district court patent rules for amending contentions.  *See Keranos, LLC v. Silicon Storage Tech., Inc.*, 797 F.3d 1025, 1035 (Fed. Cir. 2015) (stating the local patent rules in the Eastern District of Texas only permit amendment to contentions upon a showing of "good cause"); *O2 Micro Int'l Ltd. v. Monolithic Power Sys.*, 467 F.3d 1355, 1363 (Fed. Cir. 2006) (stating the local patent rules in the Northern District of California allow amendments to contentions only for "good cause").  The law of the Federal Circuit controls for amending invalidity contentions because this issue is "unique to patent cases" and therefore has "a close relationship to enforcement of substantive patent law."  *O2 Micro Int'l*, 467 F.3d at 1365.

In *O2 Micro International*, patent holders O2 Micro International Limited and O2 Micro, Inc. (collectively "O2 Micro") filed suit in the Northern District of California alleging infringement of U.S. patent 6,259,615 against Monolithic Power Systems, Inc. ("MPS").  *Id.* at 1357–58.  A scheduling order fixed the date for submission of final infringement and invalidity contentions.  *Id.* at 1359.  Under the local patent rules in the Northern District of California, unless amendments are being proposed in response to the court's order on claim construction, amendments to contentions are only permitted for "good cause." *Id.* at 1360.  Approximately three months after final infringement contentions were submitted, O2 Micro submitted supplemental contentions to MPS, despite objections of MPS' counsel.  *Id.* at 1361.  O2 Micro argued the "good cause" standard for amending contentions should be "permitted as a matter of course when new information is revealed in discovery."  *Id.* at 1365.  The Federal Circuit disagreed.  In the context of amending disclosures in a patent case, a showing of "'good cause' requires a showing of diligence."  *O2 Micro*, 497 F.3d at 1366.

If a party shows they acted with the requisite level of diligence in seeking to supplement contentions, any prejudice to the opposing party may also be considered.  *Id.* at 1368.  Prejudice associated with the amendment of invalidity contentions may include "extending discovery," the need to construe additional claim terms, or any other effects on the construction of claim terms, such as whether the proposed amendments represent a "major change."  *See Kruse Tech. P'ship*

---

[1] Unique to patent cases, within a trial court's "broad power to control its docket and enforce its order" falls local patent rules and standing patent orders, which provide the court with a myriad of case management tools to help guide the direction of the case.  *Keranos, LLC v. Silicon Storage Tech., Inc.*, 797 F.3d 1025, 1035 (Fed. Cir. 2015); *see also Mortgage Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1320 (Fed. Cir. 2016).  At the time of the present dispute, this Court did not have any such patent rules in effect (although this Court later adopted the Patent Rules of the Court of Federal Claims ("PRCFC") on 2 July 2018).  To supplement the lack of local patent rules at the time, the parties proposed additional rules modeled after the Special Procedures Order for Cases under 28 U.S.C. § 1498(a) in the Joint Preliminary Status Report filed on 11 July 2016.  *See generally* JPSR, ECF No. 28. This Court then issued a scheduling order on 20 July 2016 adopting certain dates proposed in the Joint Preliminary Status Report.  However, the 20 July 2016 scheduling order does not adopt any further provisions of the Joint Preliminary Status Report. *See generally* Order, ECF No. 33.  This Court further clarified the Joint Preliminary Status Report was not adopted in full during oral argument on 17 August 2018.  Tr. page 70:15–20, ECF No. 134 (stating that while it adopted dates from the Joint Preliminary Status Report in the 20 July 2016 Scheduling Order, the Joint Preliminary Status Report "at large" was not adopted).  Defendants' attempt to amend invalidity contentions is therefore governed by the applicable RCFC.  While the standard for amending disclosures set forth in the Joint Preliminary Status Report is not in effect, this distinction is effectively procedural in nature, as the standard set forth in the Joint Preliminary Status Report mirrors the "good cause" requirement of the applicable RCFC.  *See* RCFC 16(b)(4); JPSR at 14, ECF No. 28.

*v. Volkswagen AG*, 544 Fed. App'x 943, 953 (Fed. Cir. 2013) ("While the parties disagree whether [defendant] sought a major change, it was a change to the theory of infringement that would likely have meant re-opening of *Markman* proceedings and extending discovery.").

Following the Federal Circuit's decision in *O2 Micro International*, in another case, this Court previously held "both diligence and prejudice are relevant considerations" when interpreting the "good cause" requirement of RCFC 16(b)(4) in the context of amending contentions in a patent infringement case. *MorphoTrust USA, LLC v. United States*, 132 Fed. Cl. 419, 420 (2017). In *MorphoTrust*, this Court was tasked with deciding whether defendants could supplement invalidity contentions after the initial court-ordered deadline. *Id.* at 419. This Court similarly acknowledged the lack of special local patent rules at the Court of Federal Claims and relied upon the Federal Circuit's decision in *O2 Micro International* in interpreting the "good cause" standard for supplementing invalidity contentions: "[r]elevant to the question of whether good cause exists in this context are both the questions of diligence and prejudice." *Id.* at 421. Considerations in determining a party's diligence include additional or unexpected results of discovery, along with the possibility of unanticipated construction of claim terms according to the court's claim construction order. *Id.* Considerations in weighing any prejudice to the party opposing amendment may include the effect of amendments on the construction of claim terms or whether experts have "staked out comprehensive positions with respect to claim construction . . . ." *Id.*

### D. Discussion

Defendants seek to supplement invalidity contentions based upon additional evidence uncovered during discovery: the NOAA Documents Mr. Noonan located, and information gathered from the depositions of various witnesses near the end of the discovery period. *See generally* Defs.' Opp'n to Mot. to Strike. Defendants must therefore satisfy the "good cause" requirement of RCFC 16(b)(4), which in the context of amending invalidity contentions requires a showing of diligence and a consideration of any potential prejudice to plaintiffs. *O2 Micro Int'l*, 467 F.3d at 1368; *MorphoTrust*, 132 Fed. Cl. at 420–21.

#### 1. Diligence

Plaintiffs argue the government cannot satisfy the diligence requirement for a failure to locate documents pertaining to systems operated by the government because the government was always in possession of the documents. Pls.' Mot. to Strike at 5. The government attributes the late discovery of the documents to the method of storage. The documents existed only as physical copies stored in a filing cabinet without any indexing. Defs.' Opp'n to Mot. to Strike at 4; *see also* Noonan Decl. ¶¶ 7, 9. The government only located the documents when interviewing Mr. Noonan in response to plaintiffs' RCFC 30(b)(6) Notice. Defs.' Opp'n to Mot. to Strike at 4. This Court must therefore determine whether a party can exercise the requisite diligence necessary for supplementing invalidity contentions when failing to locate and disclose information always in its possession.

Here, the government did not store the NOAA Documents in a readily searchable format, such as an electronic database. Instead, the NOAA Documents were only available in physical

form at a single location: inside a filing cabinet accompanied by unrelated documents with no indexing.  *Id.*  Further, the government did not have reason to suspect the NWR systems, as previously understood, could operate (or previously did operate) according to direction for authenticating NWEMS received from state and local authorities.  *Id.* at 10.  According to government's counsel, despite previous discussions with NOAA employees, the government "had zero knowledge" of the authentication method disclosed in the NOAA Documents.  Tr. at 79:1–23, ECF No. 134.  Absent the fortuitous encounter with Mr. Noonan, the government would not have located the NOA Documents resulting in a fundamental change in understanding of how the NWR systems could (or did) operate.  Defs.' Opp'n to Mot. to Strike at 4–5.  While plaintiffs attempted to show the government's prior knowledge of Mr. Noonan as a result of his name appearing on previously produced documents, plaintiffs fail to show how the production of a printout of a publicly available presentation on HazCollect was enough to alert the government to seek out Mr. Noonan and search for the MOUs and MOAs, which were then still unknown to the government.  *See* Tr. at 74:14–22, ECF No. 134.

The government's uncovering of the NOAA Documents resulting in a fundamental change in the understanding of the technology[2] is an example of the "unexpected results of discovery" contemplated in *MorphoTrust* warranting the supplementation of invalidity contentions.  *MorphoTrust*, 132 Fed. Cl. at 421.  Other courts have reached similar results when presented with like facts.[3]  As the government was unaware the NWR systems could operate in

---

[2] In plaintiffs' Reply in Support of Plaintiffs' Motion to Strike Defendants' Untimely Supplemental Invalidity Contentions, plaintiffs challenge defendants' assertion of invalidity under Pre-AIA 35 U.S.C. § 102(g).  Plaintiffs allege defendants' supplemental invalidity contentions do not constitute a "disclosure of systems under 35 U.S.C. § 102(g)," as Pre-AIA § 102(g) is concerned with whether an "act of prior invention occurred."  Pls. Reply to Mot. to Strike at 3 (emphasis omitted).  Whether defendants' supplemental invalidity contentions properly raise grounds for invalidity under Pre-AIA § 102(g) is not presently before the Court.  Here, the Court is tasked only with evaluating whether defendants are permitted to supplement their invalidity contentions pursuant to RCFC 16(b)(4).

[3] In *Kroy IP Holdings, LLC v. AutoZone, Inc.*, one of the defendants, Hallmark Marketing Company, LLC ("Hallmark"), sought to supplement invalidity contentions with two videos alleged to describe the functionality of a previous version of the accused infringing system.  No. 2:13-cv-888, 2014 WL 7463099, at *5 (E.D. Tex. Dec. 30, 2014).  The court acknowledged the size of Hallmark as a company and the storage medium of the videos, considering "Hallmark is a large company and that the [videos] were not maintained in electronic or other readily searchable form" in allowing Hallmark to supplement its invalidity contentions.  *Id.* at *5.  In *In re Papst Licensing GMBH & Co. KG Patent Litigation*, on remand from the Federal Circuit, the accused infringers (referred to collectively as "the Camera Manufacturers") sought to amend their invalidity contentions based upon an alleged break in the chain of priority not previously asserted.  279 F. Supp. 3d 28, 31 (D.D.C. 2017).  The court found despite that "the Camera Manufacturers *could have* identified the grounds for their invalidity contention from the face of the relevant patents and patent applications . . . a showing of diligence does not require a showing of 'perfect[ion].'"  *Id.* at 35 (quoting *Fujifilm Corp. v. Motorola Mobility LLC*, No. 12-cv-03587, 2014 WL 491745, at *4 (N.D. Cal. Feb. 5, 2014).  Conversely, in *Symantec Corp. v. Acronis Corp.*, accused infringers Acronis, Inc., Acronis International GMBH, and OOO Acronis (collectively "Acronis") sought to amend their invalidity contentions to add additional prior art references based upon their own products.  No. 11-5310, 2013 WL 5368053, at *1 (N.D. Cal. Sept. 25, 2013).  An error in one of Acronis' internal databases caused improper release dates to be attributed to certain products.  *Id.* at *4.  The court found Acronis did not exercise sufficient diligence as the products were not alleged as prior art references in the initial invalidity contentions.  *Id.*  In doing so, the court noted that when considering a party's diligence, "the critical question is whether the party 'could have discovered [the new information] earlier had it acted with the requisite diligence," and "mistakes or omissions are not by themselves good cause."  *Id.* (quoting *Google, Inc. v. Netlist, Inc.*, No. 08-4144, 2010 WL 1838693, at *2 (N.D. Cal. May 5, 2010)).

this manner, and the NOAA Documents were not stored in a readily searchable format, the Court accordingly finds the government exercised the requisite level of diligence in locating the NOAA Documents upon learning of their existence after discussions with Mr. Noonan.

The Court next applies the diligence inquiry to defendants' developing invalidity theories based upon HazCollect.  The government identifies two reasons for the delay in developing the HazCollect theory after the submission of invalidity contentions on 16 December 2016: first, the review of voluminous and burdensome documents from government agencies, related non-parties, and witnesses; and second, information gathered during the depositions of Messrs. Ham, Estelle, and Eyestone.  Defs.' Opp'n to Mot. to Strike at 5, 10.  Plaintiffs argue HazCollect is a system operated by the government, and therefore the government lacked diligence by not disclosing any theories regarding HazCollect in the original invalidity contentions of 16 December 2016.  Pls.' Mot. to Strike at 5–6.

Plaintiffs here do not challenge defendants' assertions regarding the review of voluminous and burdensome documents, nor do they dispute defendants' claims of gathering additional information during depositions contributing to the development of an invalidity theory based upon HazCollect.  While HazCollect was a government-operated system, the government could not "reasonably assert" invalidity based on this technology until it received the missing documents from the non-party contractor, accompanied by the information learned during depositions.  Tr. at 86:13–88:1, ECF No. 134.  "[T]he party seeking leave to amend [must act] with diligence in promptly moving to amend when new evidence is revealed in discovery."  *O2 Micro Int'l*, 467 F.3d at 1363.  Courts have previously found parties acted with sufficient diligence when seeking to amend invalidity contentions based upon information gathered during depositions.[4]  As the invalidity theory regarding HazCollect required documents obtained from a non-party in addition to information not uncovered until the depositions of Messrs. Ham, Estelle, and Eyestone, the Court finds the government exercised the requisite level of diligence in developing this theory throughout the discovery period.

## 2.  Prejudice

A further consideration to determine defendants' good cause involves weighing potential prejudice suffered by plaintiffs.  *See O2 Micro Int'l*, 467 F.3d at 1368; *MorphoTrust*, 132 Fed. Cl. at 419.  Plaintiffs argue they have been denied fair notice of defendants' invalidity theories, resulting in significant prejudice in the preparation of both plaintiffs' claim construction theories and in conducting discovery.  Pls.' Mot. to Strike at 7.  Plaintiffs cite additional prejudice including "further delays of this litigation and increases in its expense."  *Id.*  Defendants respond to plaintiffs' allegations of prejudice by noting the parties have not exchanged expert reports, no potential claim construction issues have been identified, and defendants offered plaintiffs a "full

---

[4] For example, in *Allergan, Inc. v. Teva Pharmaceuticals USA, Inc.*, defendants contended "they did not have a sufficient basis to assert an invalidity defense . . . until they deposed [the inventor]."  No. 2:15-cv-1455, 2017 WL 1512334, at *2 (E.D. Tex. Apr. 27, 2017).  Documents relevant to the deposition were not produced to defendants until the day before the deposition took place.  *Id.* at *1.  The court found information learned by defendants during the deposition provided a "good faith basis" to amend their contentions to include the invalidity defense.  *Id.* at *3.

opportunity to analyze Defendants' supplemental contentions prior to deposing NOAA witnesses." Defs.' Opp'n to Mot. to Strike at 12.

The Court reviews potential prejudice to plaintiffs at the current stage of proceedings in this case. First, plaintiffs will be afforded sufficient notice of defendants' invalidity theories prior to the start of expert discovery, which does not begin until after the Court issues its order on claim construction. This eliminates any potential prejudice to expert positions, as discussed in *MorphoTrust*. 132 Fed. Cl. at 421 ("Plaintiff points out that its expert has now staked out comprehensive positions with respect to claim construction without the understanding that defendants would challenge several additional terms as indefinite."). Second, plaintiffs did not raise any claim construction terms that will be affected by defendants' supplemental invalidity contentions, alleviating any potential prejudice regarding the need to supplement claim interpretation. *Id.* ("[Plaintiffs] expert expressed his views as to the meaning of several of the terms that defendants now challenges [sic] as indefinite. . . . The flaw in [allowing supplemental expert reports] is that it leaves plaintiff or its expert open to cross-examination or challenge concerning differences between the first and supplemental report."). Even if plaintiffs did identify any claim construction terms that could be affected by defendants' supplemental invalidity contentions, the Court has yet to issue its decision on claim construction. Finally, to the extent plaintiffs seek additional discovery regarding issues raised in defendants' supplemental invalidity contentions, defendants attempted to alleviate any potential prejudice by allowing plaintiffs the opportunity to review the supplemental invalidity contentions prior to the deposition of any NOAA witnesses. Defs.' Opp'n to Mot. to Strike at 12. It was plaintiffs who cancelled the previously scheduled 30(b)(6) deposition of a NOAA witness upon receiving defendants' supplemental invalidity contentions. *Id.* Should plaintiffs still seek to depose the NOAA witness (or witnesses), such additional limited fact discovery will not result in any significant delays. The Court finds plaintiffs will not be unduly prejudiced by allowing defendants to supplement invalidity contentions.

### 3. Conclusion

As defendants have shown good cause why their supplemental invalidity contentions should be allowed by satisfying the diligence inquiry, and plaintiffs will not be unduly prejudiced by the supplementation, the Court permits defendants to supplement invalidity contentions in the form served on plaintiffs on 11 May 2018.

## III.   Defendants' Motion to Reopen Fact Discovery as to Non-Party Multi-Technical Systems, Inc.

### A. Procedural History

According to this Court's 23 February 2018 Order, fact discovery was set to close on 11 May 2018. Although the parties conducted additional depositions after the close of fact discovery pursuant to this Court's Orders of 16 May 2018 and 28 August 2018, including the deposition of Mr. Douglas Weiser, 11 May 2018 marked the close of fact discovery on all other matters. Order, ECF No. 92. On 18 April 2019, defendants filed their Motion to Reopen Fact Discovery as to Non-Party Multi-Technical Systems, Inc., ECF No. 142, seeking leave to modify

the scheduling order pursuant to RCFC 16(b)(4).  Plaintiffs filed their Opposition to Defendants' Motion to Reopen Fact Discovery as to Non-Party Multi-Technical Systems, Inc. ("Pls.' Opp'n to Mot. to Reopen Disc."), ECF No. 147, on 9 May 2019.  On 16 May 2019, defendants filed their Reply in Support of their Motion to Reopen Fact Discovery as to Non-Party Multi-Technical Systems, Inc. ("Defs.' Reply to Mot. to Reopen Disc."), ECF No. 148.

### B.  Factual History

Following the 13 September 2018 deposition of Mr. Douglas Weiser, a named inventor on the patents, Mr. Weiser produced a series of approximately 7,000 documents.  The documents include references to technology in the field of the patents previously unknown to defendants. Defs.' Mot. to Reopen Disc. at 1.  Specifically, defendants allege among the nearly 7,000 documents produced, two of the documents reference Multi-Technical Systems, Inc. ("MTS"). *Id.*  Defendants argue these documents show MTS developed a system as part of a pilot program in 2005 that may constitute potentially invalidating prior art with respect to the patents. *Id.* at 5. Plaintiffs do not dispute these documents contain relevant information regarding MTS.  *See* Pls.' Opp'n to Mot. to Reopen Disc. at 1.

The parties agree Mr. Weiser should have produced the relevant documents discussing the technology before his deposition.  Plaintiffs describe Mr. Weiser's action as an "inexplicable failure to recognize that he possessed documents that should have been produced in response to the subpoena in this case."  *Id.* at 2.  Defendants first served a subpoena on Mr. Weiser, through plaintiffs' counsel, on 25 September 2017 seeking documents related to "the research, design, development, manufacture, assembly, testing, or operation of any product that embodies the subject matter to which the patents-in-suit are directed . . . ."  Defs.' Mot. to Reopen Disc. at 2. Plaintiffs' counsel informed defendants Mr. Weiser did not possess any documents responsive to the request.  *Id.* at 3.  While defendants continued to request this information, plaintiffs continued to represent Mr. Weiser did not possess any such documents.  *See id.* at 3–4.

"Plaintiffs urged Defendants to take Mr. Weiser's deposition in the hopes of resolving Defendants' concerns."  Pls.' Opp'n to Mot. to Reopen Disc. at 7.  However, defendants did not conduct any fact discovery regarding third-party MTS prior to the close of fact discovery, claiming "[n]o document produced by Plaintiffs mentions the MTS system . . . ."  Defs.' Mot. to Reopen Disc. at 5.  Plaintiffs, however, maintain that their previous "document production did include information regarding third-party MTS."  Pls.' Opp'n to Mot. to Reopen Disc. at 4.  To support their position, plaintiffs reference a single November 2006 email discussing previous work done on "decoder boxes" by a party identified as "MultiTech."  *Id.*

Plaintiffs also suggest defendants' knowledge of third-party cell network provider Einstein Wireless ("Einstein") provided defendants with notice of the MTS system.  *Id.* at 6.  A government employee, David Webb, along with a government contractor, "personally attended at least one demonstration of the Einstein Wireless cell broadcast pilot, in the course of work in IPAWS development."  *Id.*  Plaintiffs assert Mr. Webb's attendance at the 2005 demonstration of technology attributes knowledge of the MTS system to defendants.  *Id.* at 6–7.

According to plaintiffs, "[f]act discovery is closed, and the case should move on." *Id.* at 9. Reopening discovery would result in the expenditure of "additional attorney time and travel expense." Pls.' Opp'n to Mot. to Reopen Disc. at 9. Plaintiffs also claim the scope of discovery sought by defendants is "effectively unlimited in terms of parties, subpoenas, or depositions" and any discovery granted "should be limited to document and deposition subpoenas to MTS concerning the [MTS system]." *Id.* While expert discovery has not yet begun, defendants seek to reopen fact discovery limited to the MTS system "and the company's interactions with Plaintiffs or the named inventors" in addition to the "[p]roduction by Mr. Weiser and Plaintiffs of all documents relating to MTS or any MTS system." Defs.' Mot. to Reopen Disc. at 12.

## C. Applicable Law

"A trial court 'has wide discretion in setting the limits of discovery.'" *Schism v. United States*, 316 F.3d 1259, 1300 (Fed. Cir. 2002) (quoting *Moore v. Armour Pharm. Co.*, 927 F.2d 1194, 1197 (11th Cir. 1991)). This Court has previously found such discovery limits to include "discretion in deciding whether to grant a motion to . . . reopen discovery." *Croman Corp. v. United States*, 94 Fed. Cl. 157, 160 (2010) (citing *Te-Moak Bands of W. Shoshone Indians of Nev. v. United States*, 948 F.2d 1258, 1260 (Fed. Cir. 1991)); *see also Wordtech Sys., Inc. v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1322–23 (Fed. Cir. 2010) (citing *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000) applying Ninth Circuit law in determining that trial court did not abuse its discretion in refusing to reopen discovery).

Modification of a court-imposed schedule may be done "only for good cause and with the judge's consent." RCFC 16(b)(4). While defendants' motion to reopen discovery is similarly governed by RCFC 16(b)(4), the rule is no longer being applied to an issue unique to patent law. Under these circumstances, the Federal Circuit applies the law of the circuit in which the case arises. *Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*, 587 F.3d 1339, 1354 (Fed. Cir. 2009) (citing *Regents of the Univ. of N.M. v. Knight*, 321 F.3d 1111, 1123 (Fed. Cir. 2003)). In *Ultimax*, plaintiffs sought to amend their complaint after the deadline for amending pleadings had passed. *Id.* The Federal Circuit applied "regional circuit law to a trial court's procedural decisions that relate to issues not unique to [the Federal Circuit's] exclusive jurisdiction, including motions for leave to amend." *Id.* In *United Medical Supply Company, Inc. v. United States*, this Court discussed the Federal Circuit's "normal practice of deciding procedural issues that do not implicate its exclusive jurisdiction under the law of the applicable regional circuit. Such procedural rulings are not binding precedent in subsequent proceedings arising out of other circuits, including cases arising out of this court." 77 Fed. Cl. 257, 265 (2007) (footnote omitted).

However, RCFC 16(b)(4) is identical to the corresponding Rule 16(b)(4) of the Federal Rules of Civil Procedure ("FRCP"). This Court's interpretation of the RCFC is guided by case law interpreting the FRCP. *See* 2002 Rules Committee Note, Rules of the United States Court of Federal Claims (as amended July 1, 2019) ("[I]nterpretation of the court's rules will be guided by case law and the Advisory Committee Notes that accompany the Federal Rules of Civil Procedure."). In *High Point Design LLC v. Buyers Direct, Inc.*, the Federal Circuit applied Second Circuit law when discussing the good cause standard of FRCP 16(b)(4) for amending pleadings after issuance of a scheduling order. "When assessing whether good cause has been

shown, 'the primary consideration is whether the moving party can demonstrate diligence.'" *High Point Design LLC v. Buyers Direct, Inc.*, 730 F.3d 1301, 1319 (Fed. Cir. 2013) (quoting *Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 244 (2d Cir. 2007)). This "requires a showing that even with the exercise of due diligence the moving party could not meet the order's timetable." *Slip Track Sys., Inc. v. Metal-Lite, Inc.*, 304 F.3d 1256, 1270 (Fed. Cir. 2002) (applying Ninth Circuit law in finding defendant's attempt to amend the pleadings first required modification of the scheduling order under FRCP 16(b)(4)). Other Circuits have interpreted the good cause standard of FRCP 16(b)(4) in a similar manner.[5]

Trial courts may also consider "other relevant factors including, in particular, whether allowing the amendment . . . will prejudice [the opposing party]." *High Point Design*, 730 F.3d at 1319 (quoting *Kassner*, 496 F.3d at 244). Prejudice related to the reopening of discovery may involve the delay of proceedings. *Wordtech Sys.*, 609 F.3d at 1322 (quoting *Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999)) ("[A] need to reopen discovery and therefore delay the proceedings supports a district court's finding of prejudice from a delayed motion to amend the complaint.").

### D.  Discussion

Defendants seek to reopen fact discovery as to third-party MTS based upon the production of approximately 7,000 documents by Mr. Weiser following his deposition. Defs. Mot. to Reopen Disc. at 1. Defendants must therefore satisfy the "good cause" requirement of RCFC 16(b)(4), which in this context requires a showing of diligence and a consideration of any potential prejudice to plaintiffs. *High Point Design*, 730 F.3d at 1319.

#### 1.  Diligence

Plaintiffs argue "MultiTech" was referenced in previously produced emails. This alone was insufficient to alert defendants to the presence of a third-party (MTS) that was potentially responsible for the development of the core technology behind the patents. Defs.' Reply to Mot. to Reopen Disc. at 5–6. Plaintiffs further fail to show why reference to Einstein provided defendants with notice of the MTS system. Absent the documents Mr. Weiser later produced, defendants were unaware MTS developed the underlying systems used in the 2005 pilot in conjunction with Einstein. *Id.* at 7. Similarly, plaintiffs' attempt to attribute knowledge to the government of MTS' involvement in developing this technology at the 2005 demonstration based upon the attendance of a single government employee fails. While Mr. Webb's deposition testimony does discuss his attendance at the demonstration, MTS' involvement was not

---

[5] In *Harris v. FedEx National LTL, Inc.*, plaintiffs sought to amend their complaint approximately seven months after the date permitted by the court's scheduling order. 760 F.3d 780, 786 (8th Cir. 2014). In construing the good cause standard of FRCP 16(b)(4), the Eighth Circuit found "'[t]he primary measure of good cause is the movant's diligence in attempting to meet the [scheduling] order's requirements.'" (quoting *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716–17 (8th Cir. 2008)). Similarly, in *Inge v. Rock Financial Corp.*, plaintiff sought leave to file a third amended complaint. 281 F.3d 613, 625 (6th Cir. 2002). The Sixth Circuit held "'[t]he primary measure of Rule 16's "good cause" standard is the moving party's diligence in attempting to meet the case management order's requirements.'" (quoting *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001)).

discussed, nor is there any indication by plaintiffs that Mr. Webb, who is not an engineer, would have recognized the contributions of the MTS system to the pilot program. *Id.* at 7–8.

Defendants have, however, provided ample support of their repeated requests to Mr. Weiser to produce all relevant documents. *See, e.g.*, Defs.' Mot. to Reopen Disc. at 2 ("[O]n September 25, 2017, IBM served a subpoena to Mr. Weiser, through Plaintiffs' counsel, for both documents and his deposition."). Despite these repeated requests, Mr. Weiser, through plaintiffs' counsel, continuously denied possessing any such documents. *See id.* at Ex. 4 (plaintiffs' counsel represented to the government in an email "Mr. Weiser does not have documents responsive to the subpoena, including in the e-mail accounts that you identified or others."); Plaintiff's Opposition to Defendants' Motion to Compel ("Pls.' Opp'n to Mot. to Compel") at 5, ECF No. 110 ("After consultation with Mr. Weiser, Plaintiffs' counsel first informed Defendants that he reported having no responsive materials in December 2017. . . . Since that time, Plaintiffs have confirmed and reconfirmed Mr. Weiser's response (and communicated that to Defendants) several times."). Defendants alleged "urging" of defendants to proceed with Mr. Weiser's deposition early in the discovery period are overshadowed by Mr. Weiser's continued denial, through plaintiffs' counsel, of possessing any relevant documents.

Defendants allege if Mr. Weiser produced the requested documents in response to the initial subpoena of 25 September 2017, defendants could have investigated any invalidity theories relating to the MTS system during the original timeframe allotted for discovery. Defs.' Mot. to Reopen Disc. at 1. Defendants repeatedly requested the production of documents from Mr. Weiser early in the discovery period. Mr. Weiser, through plaintiffs' counsel, continuously represented he did not possess any relevant documents. *Id.* at 2. Plaintiffs' counsel later referred to defendants repeated requests for Mr. Weiser to produce all relevant documents as delay tactics. *See* Decl. of Calvin E. Wingfield, Jr. in Support of Defs.' Mot. to Compel the Dep. of Mark A. Wood and Douglas D. Weiser at Ex. 8, ECF No. 98 ("We believe that defendants are continuing to delay discovery with these tactics."); Pls.' Opp'n to Mot. to Compel at 8 ("Defendants' conduct . . . has already prejudiced Plaintiffs by unnecessarily delaying the resolution of this case, in addition to forcing Plaintiffs' counsel to spend countless hours on Defendants' gamesmanship with regard to Messrs. Wood and Weiser."); Tr. at 39:12–16, ECF No. 134 ("This is an entirely manufactured excuse for the Defendants' tactics in which they basically put off taking Mr. Weiser's deposition so that they could take all the other fact discovery and then come back at the end.").

Other courts have permitted the reopening of limited discovery when presented with similar facts. For example, in *Polyzen, Inc. v. RadiaDyne, LLC*, despite defendants' repeated requests for production of documents relevant to the deposition of a witness, plaintiff delayed producing the documents for more than five months. No. 5:11-cv-662, 2014 WL 2505244, at *3 (E.D. N.C. June 2, 2014), *aff'd per curiam*, 726 F. App'x 819 (Fed. Cir. 2018) (mem.). Focusing on defendant's diligence in repeatedly seeking production of the documents, the court permitted the reopening of limited discovery to depose additional witnesses, in addition to the opportunity to re-depose one witness regarding a single issue. *Id.*

The refusal of plaintiffs' witness to produce relevant documents does not discount defendants' efforts in seeking the production. Accordingly, the Court finds the government

exercised the requisite level of diligence in seeking the discovery of information from Mr. Weiser.

### 2.   Prejudice

When considering the need to reopen discovery, the Court may also weigh potential prejudice to plaintiffs. *See High Point Design*, 730 F.3d at 1319; *Wordtech Sys.*, 609 F.3d at 1322. Other courts have noted the need to reopen discovery, and delays caused in the proceedings, may constitute prejudice to the non-moving party. *Id.* at 1322 (citing *Lockheed*, 194 F.3d at 986). Regarding the impositions here, plaintiffs allege the requested discovery is "effectively unlimited in scope" and identified "additional attorney time and travel expense" as prejudice. Pls.' Opp'n to Mot. to Reopen Disc. at 9. Defendants respond that (1) any allegation of delay is unfounded and (2) additional time or expense related to further discovery regarding MTS is outweighed by the importance of defendants' ability to investigate the potential for invalidating prior art previously unknown to them. *See Defs.' Mot. to Reopen Disc. at 11–12.

Reviewing the status of the case, and concerns of both parties, the Court concludes that no delays in the proceedings will likely occur. Expert discovery is not set to begin until after the Court issues its order on claim construction. Order at 3, ECF No. 131. The allowance of additional limited fact discovery regarding MTS will therefore take place during a time where the parties are not otherwise engaged in substantive actions pursuant to this Court's scheduling order. Accordingly, this already existing gap time eliminates any potential prejudice associated with delays pending additional discovery. Further, defendants are not requesting unlimited discovery; unlimited discovery would seek the open-ended production of documents or depositions from multiple parties or relating to multiple sources of evidence. Instead, defendants now seek discovery regarding a previously unknown third-party, uncovered as a result of a belated document production from plaintiffs' witness. This discovery is limited to one particular third-party focused on one particular system, and any previous interactions between the third-party and plaintiffs. *See* Pls.' Mot. to Reopen Disc. at 12. The Court finds plaintiffs will not be unduly prejudiced by the reopening of limited fact discovery regarding third-party MTS.

### 3.   Conclusion

As defendants have shown good cause why limited fact discovery should be reopened as to third-party MTS by satisfying the diligence inquiry, and plaintiffs will not be unduly prejudiced by the allowance of such limited discovery, defendants shall be permitted to proceed with limited fact discovery as to third-party MTS pursuant to further order of the Court.

## IV.   Conclusion

For the reasons set forth above, plaintiffs' Motion to Strike Defendants' Untimely Supplemental Invalidity Contentions is hereby **DENIED**. Defendants are permitted to amend their invalidity contentions in the form produced to plaintiffs on 11 May 2018. Defendants' Motion to Reopen Fact Discovery as to Non-Party Multi-Technical Systems, Inc. is hereby **GRANTED**. The parties shall submit a joint proposal as to the scope and time limits of

additional discovery regarding third party Multi-Technical Systems, Inc. **within 14 days of this Order and Opinion**.

      **IT IS SO ORDERED.**

s/ Ryan T. Holte

RYAN T. HOLTE

Judge
